UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-mj-829 (ECW)

UNITED STATES OF AMERICA,

          Plaintiff,

**ORDER OF DETENTION**

v.

DARRIAN MITCHELL NGUYEN,

          Defendant.

This matter came before the Court on October 7, 2002, for a preliminary hearing and a hearing on the motion of the United States for an Order of Detention as to Defendant Darrian Mitchell Nguyen (the "Defendant"). Defendant was present and represented by his attorney, Doug Olson. The United States was represented by Assistant United States Attorney Manda M. Sertich. Probable cause was found and Defendant was bound over for further proceedings by a United States Grand Jury. Based upon the evidence presented at the hearing, the arguments of counsel, and all the files and proceedings herein, the Court concludes that there has been a showing by clear and convincing evidence that release of Defendant will result in a danger to the community. Accordingly, the Court will grant the Government's motion for detention.

## FINDINGS OF FACT

On October 4, 2002, Defendant was charged by Complaint with violations of Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Manufacture or Distribute a Controlled Substance), Title 18, United States Code, Section 922(o)

(Possession or Transfer of a Machinegun), and Title 26, United States Code, Section 5861(d) (Receipt or Possession of Firearm Not Registered in the National Firearms Registration and Transfer Record). The Complaint alleges that on or about August 23, 2022, Defendant possessed with the intent to distribute 5 or more grams of methamphetamine, and that on or about October 4, 2022, Defendant knowingly possessed a machine gun and a fully automatic short-barreled rifle that was not registered to him in the National Firearms Registration and Transfer Record ("NFRTR").

In seeking detention of Defendant, the Government relied on both the Bond Report and the testimony of Special Agent Tim Krieger of the Federal Bureau of Investigation ("FBI"). In recommending detention, the Bond Report and its Addendum (collectively, the "Bond Report") noted Defendant's substance abuse history (regular use of methamphetamine) and the nature of the instant offense. The Bond Report noted that while Defendant's brother offered his residence as a place for Defendant to stay, Defendant's brother was not aware of Defendant's substance abuse issues.

Special Agent Krieger provided significant testimony on several topics. First, Special Agent Krieger summarized information the FBI learned about Defendant from a Confidential Human Source (the "CHS") who had been in regular contact with Defendant for several years leading up to and including 2020. The CHS reported to the FBI that Defendant was a supplier of methamphetamine, that he had many firearms, and that he had a desire to attack certain groups of people. More specifically, the CHS reported that he himself purchased methamphetamine from Defendant up until a time in 2020 that the CHS

was arrested, and after which he owed Defendant a debt for money and drugs that were confiscated by law enforcement. The CHS also reported that Defendant possessed a firearm with a grenade launcher attached to it and explosives in the form of pipe bombs in "secret" or "hidden" rooms built into the sheet rock of his house. The CHS also reported that Defendant harbored views consistent with Three Percenter ideology, which advocates for revolution against the U.S. government, and that Defendant discussed killing or "blowing up" liberals or members of Black Lives Matter.

Second, Special Agent Krieger testified regarding three meetings the CHS had with Defendant at Defendant's residence in Anoka, Minnesota, in July and August 2022—two of which were audio recorded. According to the CHS, during the first meeting on July 13, 2022, Defendant asked whether he could correct the debt he owed Defendant, and Defendant asked the CHS to provide him with fully automatic firearms and auto sears. Defendant told the CHS he could sell the CHS narcotics when this debt was fulfilled.

According to the CHS, at the second meeting on August 9, 2022 (during which the audio recording equipment failed), Defendant clarified that he wanted a fully automatic short-barreled rifle using auto sears. Defendant confirmed he still had his "whole collection" of firearms that he had in 2022, including the firearm with the grenade launcher. During this meeting, Defendant told the CHS that he would like to "level a whole block of blacks." Defendant also told the CHS that he was manufacturing methamphetamine and sold the CHS 3.7 grams of methamphetamine for $100 (the money was provided by the

FBI for a controlled purchase). The suspected narcotics field tested positive for methamphetamine.

Special Agent Krieger testified that after the second meeting, Defendant sent the CHS a text message saying, "It's time, the hour has come," accompanied by a video relating to anti-government conspiracy theories following the execution of a search warrant at former President Donald Trump's residence in Mar-a-Lago.

According to the CHS, during a third meeting at Defendant's residence on August 23, 2022, Defendant discussed the fact that there should be a revolution following the execution of the search warrant at Mar-a-Lago and that former President Trump should conduct a coup d'état. Defendant then stated that he wanted a short-barreled rifle like a rifle that the CHS once had. Defendant clarified that he wanted the weapon to be fully automatic and, referencing auto sears, the CHS told Defendant that they could make all of Defendant's weapons fully automatic. Defendant responded by giving the CHS two thumbs up and again referenced upcoming gun fire and the potential for a coup d'état. Defendant showed the CHS some items he had to manufacture methamphetamine and sold the CHS 7.1 grams of methamphetamine for $300 (the money was again provided by the FBI for a controlled purchase). The suspected narcotics field tested positive for methamphetamine.

Special Agent Krieger testified that the FBI constructed a weapon based on Defendant's request that would be provided to Defendant in a controlled delivery—a short-barreled rifle (less than 16 inches) with an auto sear installed. On September 29 and 30,

2022, the CHS messaged Defendant to let Defendant know the firearm was ready and sent Defendant pictures of the firearm and four auto sears. On October 1, 2022, the CHS sent Defendant additional images of the firearm and auto sears. On October 2, 2022, Defendant responded that his phone had been dead and wrote, "So are those in the picture mine or about to be purchase by me?" The CHS responded that they were Defendant's. Messages were then exchanged between Defendant and the CHS to arrange for delivery of the weapons on Tuesday, which was October 4, 2022.

Special Agent Krieger testified that on October 4, 2022, the CHS was at first unsuccessful at reaching Defendant by phone or at Defendant's residence. However, Defendant eventually contacted the CHS and told the CHS to meet him at his house. When the CHS arrived at the house, the garage door was open, and the CHS entered with a black firearm bag containing the short-barreled rifle and the auto sears. The CHS placed the bag on the trunk of Defendant's car, which was parked in the garage. The CHS took out the short-barreled rifle and the auto sears, and Defendant made positive comments about them and thanked the CHS. The CHS asked if the delivery of the firearm and auto sears satisfied the debt owed to Defendant, and Defendant confirmed that it did. As the CHS left Defendant's residence, Defendant was walking from the attached garage into the residence with the firearm bag in his hands.

Law enforcement then announced their presence and ordered Defendant to surrender. Defendant came out of the residence and surrendered to law enforcement.

Law enforcement then executed a search warrant at Defendant's residence. They recovered the weapons from the controlled delivery from the seat of Defendant's car, which was still parked in his garage. Law enforcement also seized 22 other firearms from the residence, including the firearm with the grenade launcher, handguns, shotguns, and rifles. One of the rifles was short barreled, and one of the shotguns may also have been short barreled. Defendant is not registered to own such weapons with the NFRTR. Most of the weapons were discovered in a "hidden" room in the basement that could be opened by opening a panel of sheet rock with a screwdriver. According to Special Agent Krieger's testimony, many of the weapons discovered in Defendant's home could be converted to fully automatic weapons using auto sears.

In Defendant's residence, law enforcement also discovered more than a pound of methamphetamine, more than 40 grams of cocaine, 27 grams of MDMA, and over 10 pounds of a powdery substance that tested inconclusive. Law enforcement also discovered a Three Percenter flag hanging from the ceiling and manuals relating to manufacturing methamphetamine and bombs.

Special Agent Krieger, who participated in the execution of the search warrant, testified that conditions in Defendant's residence were deplorable, including smells of rot and decay, many bugs, nonfunctioning bathrooms with standing water, and general uncleanliness. Law enforcement called adult protective services to tend to Defendant's elderly and blind mother, who also lives at the residence.

Defendant argued that he should be released because most of the weapons in his home were legally possessed, he was taken into custody on this case peacefully and without any issues, and because he has significant familial ties to Minnesota.

## **DISCUSSION**

Under 18 U.S.C. §§ 3142(e) and (f), detention may be ordered either upon clear and convincing evidence showing that release will result in a danger to the community or upon a showing by a preponderance of the evidence that release will result in a serious risk of flight or non-appearance. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

The Court considered the evidence and arguments presented by the Government and defense as set forth herein in relation to the factors this Court must consider pursuant to 18 U.S.C. § 3142(g). As such, while the Court carefully considered the way the case came to the Court (involving the use of a CHS and controlled delivery), the Court considered the nature and circumstances of the offense charged, which include both controlled substances and firearms for which registration is required, including the delivery of auto sears that could render Defendant's legal weapons fully automatic; the weight of the evidence against Defendant, including recorded meetings and text messages; the history and characteristics of Defendant, including his possession of one and possibly two unregistered firearms independent of any conduct by the CHS; and the nature and seriousness of the danger to any person or the community posed by Defendant's release, including Defendant's interest in Three Percenter ideology and a coup d'état. The fact that Defendant sought out fully

automatic weapons while talking about a coup d'état and the fact that Defendant faces a five-year mandatory minimum sentence weigh in favor of detention.

The Court also considered GPS-monitored release of Defendant to live with his brother, but ultimately concludes that the brother's work schedule and lack of knowledge regarding Defendant's methamphetamine use does not provide for appropriate supervision. GPS supervision also does not ensure the safety of the community.

## CONCLUSION

The Court concludes that no condition or combination of conditions of bond will reasonably ensure the safety of the community. Accordingly,

IT IS HEREBY ORDERED that:

1. The motion of the United States for detention of Defendant is GRANTED;

2. Defendant is committed to the custody of the United States Marshals for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. Defendant shall be afforded reasonable opportunity to consult privately with his lawyer; and

4. Upon Order of the Court or request by the United States Attorney, the person in charge of the corrections facility in which Defendant is confined shall deliver him to the United States Marshal for the purpose of appearance in connection with a court proceeding.

Dated: October 12, 2022        *s/Elizabeth Cowan Wright*
                               THE HONORABLE ELIZABETH COWAN WRIGHT
                               United States Magistrate Judge